Filed 7/26/22 In re G.S. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re G.S., A Person Coming Under Juvenile Court Law. | B314378 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP03271) |
| Plaintiff and Respondent, | |
| v. | |
| MARISA M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Judge Pro Tempore. Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

---

**INTRODUCTION**

Appellant Marisa M. appeals from the juvenile court's order terminating her parental rights to her daughter G.S. (born in June 2020). G.S.'s alleged father, Harold S. (Alleged Father), is not a party to this appeal; his whereabouts and contact information remained unknown throughout the proceedings below, despite diligent efforts to locate him by the Los Angeles County Department of Children and Family Services (DCFS). Appellant attested to DCFS and the juvenile court that she and Alleged Father had no Indian ancestry, and denied that G.S. was or might have been an Indian child. Nevertheless, on appeal, appellant contends DCFS and the court prejudicially failed to comply with the inquiry requirements of state law related to the Indian Child Welfare Act (ICWA), because DCFS failed to ask unspecified extended family members whether -- contrary to appellant's own representations -- appellant or Alleged Father had Indian ancestry. Appellant does not claim the record contains any information suggesting a reason to believe G.S. may be an Indian child. Nor does appellant proffer any such

information that might be forthcoming were we to order a remand, at the cost of further delaying permanence and stability for the child. We conclude any error was harmless under the reason-to-believe rule adopted by our colleagues in Division Two, for reasons we find persuasive, in *In re Dezi C.* (2022) 79 Cal.App.5th 769 (*Dezi C.*). Accordingly, we affirm.

## PROCEEDINGS BELOW

On June 9, 2020, DCFS received a child welfare referral alleging appellant neglected her newborn daughter G.S., who had tested positive for methamphetamine and amphetamine at birth. The same day, a social worker spoke with both appellant and G.H., G.S.'s maternal grandmother (Grandmother). Appellant was living with Grandmother, whom she identified as her support in times of need. Appellant told the social worker that Alleged Father, whom she identified as G.S.'s biological father, was homeless, unemployed, and "in and out of jail." Subsequently, appellant told DCFS she had no contact information for Alleged Father or his relatives. DCFS exercised due diligence in attempting to locate Alleged Father, without success.

On June 17, 2020, a social worker phoned both Sebastian C., G.S.'s maternal uncle (Uncle), and Veronica C., G.S.'s maternal great-aunt (Great-Aunt), each of whom expressed willingness to care for G.S. temporarily. On June 18, DCFS filed a petition under Welfare and Institutions Code section 300, subdivision (b)(1), containing two counts

3

based on allegations that appellant's substance abuse endangered G.S.[1]

On June 23, 2020, appellant filed an ICWA-020 form declaring, under penalty of perjury, "I have no Indian ancestry as far as I know." By declining to check the corresponding box on the form, appellant denied that "[t]he child is or may be a member of, or eligible for membership in, a federally recognized Indian tribe."[2]

At the detention hearing, the juvenile court addressed appellant as follows: "In looking at the mother's [ICWA-020 form], which is signed under penalty of perjury, you indicate that you have no Native American Indian heritage, as far as you know. [¶] Is that correct, ma'am?" Appellant confirmed, "Yes." The court proceeded to ask appellant if she knew whether Alleged Father had Indian heritage. Appellant responded, "He does not." In light of appellant's denials of Indian ancestry, the court found it had no reason to know G.S. was an Indian child, and ICWA did not apply.

At the conclusion of the detention hearing, the court ordered G.S. detained from appellant and placed in foster

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

[2]    In the same manner, appellant denied the following statements: (1) "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe"; (2) "I may have Indian ancestry"; and (3) "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe."

4

care. In August 2020, the court sustained the petition on both counts. In January 2021, G.S. was placed with Great-Aunt and her husband. In April 2021, the court terminated appellant's reunification services, citing appellant's noncompliance. In August 2021, at a contested permanency hearing, the court terminated appellant's and Alleged Father's parental rights and selected adoption as G.S.'s permanent plan, designating Great-Aunt and her husband as the prospective adoptive parents. Appellant timely appealed.

## DISCUSSION

Appellant contends DCFS and the juvenile court prejudicially failed to comply with the inquiry requirements of state law related to ICWA, because DCFS failed to ask unspecified extended family members whether appellant or Alleged Father had Indian ancestry. We conclude any error was harmless.

### A. Inquiry Error

ICWA defines "'Indian child'" to mean any unmarried minor who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903, subd. (4); see also § 224.1, subd. (a).) "'"ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child."'" (*In re Y.W.* (2021) 70 Cal.App.5th 542,

5

551.)  The federal regulations implementing ICWA require such inquiry only of participants in the proceedings.  (*Ibid.*; see also *Dezi C.*, *supra*, 79 Cal.App.5th at 779, fn. 5.)  Under state law, however, the juvenile court and county welfare department have an "affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)  A duty of initial inquiry is triggered upon placement of a child in the department's custody, and "includes, but is not limited to, asking the . . . parents, . . . extended family members, [and] others who have an interest in the child . . . whether the child is, or may be, an Indian child."[3]  (§ 224.2, subd. (b).)

Here, DCFS was in contact with Grandmother, Uncle, and Great-Aunt, but admittedly did not ask them whether G.S. was or might have been an Indian child.  We assume, arguendo, DCFS erred in discharging its duty of initial inquiry under section 224.2.[4]

---

[3]     A requirement for "further" inquiry is triggered if the department receives information establishing reason to believe the child is an Indian child.  (§ 224.2, subd. (e).)  If the department receives information establishing reason to *know* the child is an Indian child, notice must be given to the child's potential tribes, and the department must exercise due diligence in verifying whether the child is, in fact, an Indian child. (§§ 224.2, subds. (f)-(g), 224.3, subds. (a)-(b); see also 25 U.S.C. § 1912, subd. (a).)

[4]     Absent an applicable tribal law or custom, ICWA's definition of "'extended family member'" includes a grandmother
*(Fn. is continued on the next page.)*

### B. Absence of Prejudice

Appellant contends DCFS's inquiry error was prejudicial, relying on a proposed rule that would require reversal where the record indicates there was readily obtainable information likely to bear meaningfully upon whether the child is an Indian child (the readily-obtainable-information rule). (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.) DCFS disagrees, relying on an alternative rule that would presumptively favor affirmance, requiring reversal only where a parent, on appeal, proffers a reason to believe the child is or may be an Indian child (the presumptive-affirmance rule). (See *In re A.C.* (2022) 75 Cal.App.5th 1009, 1021, 1024 (conc. & dis. opn. of Crandall, J.).) Below, we reject both proposed rules, and adopt the reason-to-believe rule set forth by our colleagues in Division Two in *Dezi C.* (See *Dezi C.*, *supra*, 79 Cal.App.5th at 778-782, 784-785.) Applying that rule to the record before us, we conclude any error was harmless.

### 1. Reason-to-Believe Rule

"'[W]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports' the court's ICWA finding. [Citation.] Where . . . the

---

and an uncle, but does not include a great-aunt. (25 U.S.C. § 1903, subd. (2); see also § 224.1, subd. (c).) We assume, but do not decide, Great-Aunt was a person who had "an interest in the child" within the meaning of section 224.2. (§ 224.2, subd. (b).)

Department's inquiry was erroneous, our examination as to whether substantial evidence supports the juvenile court's ICWA finding ends up turning on whether that error by the Department was harmless -- in other words, we must assess whether it is reasonably probable that the juvenile court would have made the same ICWA finding had the inquiry been done properly. (*People v. Watson* (1956) 46 Cal.2d 818, 836, [299 P.2d 243] (*Watson*). If so, the error is harmless and we should affirm; otherwise, we must send it back for the Department to conduct a more comprehensive inquiry.'" (*Dezi C.*, *supra*, 79 Cal.App.5th at 777.)

We adopt the reason-to-believe rule set forth in *Dezi C.* as follows: "An agency's failure to discharge its statutory duty of initial inquiry is harmless unless the record contains information suggesting a reason to believe that the children at issue may be 'Indian child[ren],' in which case further inquiry may lead to a different ICWA finding by the juvenile court. For these purposes, the 'record' means not only the record of proceedings before the juvenile court but also any further proffer the appealing parent makes on appeal." (*Dezi C.*, *supra*, 79 Cal.App.5th at 774.) There is "reason to believe" if the record contains "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1); see also *Dezi C.*, at 780-781.) We agree with our colleagues in Division Two that this reason-to-believe rule is proper because it (1) logically incorporates the statutory reason-to-believe standard, which "reserves further inquiry

8

for those cases in which such inquiry may affect the juvenile court's ultimate ICWA determination," into the outcome-focused test for prejudice compelled by our state's Constitution; (2) "effectuates the rights of [Indian] tribes in those instances in which those rights are most likely at risk, . . . removes the incentive [for parents] to use ICWA as a thirteenth-hour delay tactic[,] and . . . still sends a 'message' to agencies that ICWA's mandates are not to be ignored"; and (3) properly focuses on what is in the record. (*Dezi C.*, at 779-782.)

We also agree with our colleagues' reasons for rejecting the alternative rules advanced here by DCFS and appellant, viz., the presumptive-affirmance rule and the readily-obtainable-information rule. The presumptive-affirmance rule improperly focuses on what, if anything, a parent proffers on appeal, to the exclusion of information in the appellate record. (*Dezi C.*, *supra*, 79 Cal.App.5th at 784-785.) The readily-obtainable-information rule, in turn, "lacks the *outcome*-focus that is the hallmark of usual harmlessness review," and appears to be "so flexible and malleable" that it "functions as a type of automatic reversal rule." (*Id.* at 785-786.) Appellant does not argue an automatic-reversal rule would be proper. In any event, *Dezi C.* persuasively rejected an automatic-reversal rule, because it would (1) confer on parents a perverse incentive *not* to object to perceived deficiencies in the department's inquiry, in order to "guarantee [on appeal] a remand that forestalls the finality of the final judgment in the dependency case

and, indeed, may even derail arranged adoption of the dependent children," giving rise to the "'very evil the Legislature intended to correct' -- namely, 'lengthy and unnecessary delay in providing permanency for children'"; (2) yield yet more delay on a successive appeal following the department's inquiry on remand, by empowering a parent to obtain *another* remand merely because the department left even a single stone unturned in section 224.2's "open-ended universe of stones"; and (3) elevate statutory provisions above "the *constitutional* mandate that reversal is only required when there would be a miscarriage of justice." (*Id.* at 784-785.) The reason-to-believe rule suffers from none of these defects. We adopt it.

### 2. *Application*

Applying the reason-to-believe rule to the record before us, we conclude any inquiry error was harmless. Appellant does not proffer any information suggesting a reason to believe G.S. may be an Indian child -- in other words, information suggesting that appellant, Alleged Father, or G.S. is a member of an Indian tribe or may be eligible for membership. (See § 224.2, subd. (e)(1); *Dezi C.*, *supra*, 79 Cal.App.5th at 780-784.) The record contains no such information. On the contrary, the record contains information strongly suggesting G.S. and her parents are *not* tribal members or eligible for membership, viz., appellant's denials that either she or Alleged Father had Indian ancestry, and that G.S. might have been a tribal member or

10

eligible for membership. (See *Dezi C.*, at 786 ["The record in this case does not provide a 'reason to believe' that [the children] are Indian children. Both mother and father attested -- to the Department, on an official form, and to the juvenile court during their initial appearances -- that they had no Indian heritage. . . . Mother points to nothing else in the juvenile court's record indicating that she or father has any American Indian heritage. And mother makes no proffer on appeal that either parent has any such heritage"].)[5]

We are not persuaded by appellant's reliance on *In re Y.W.*, *supra*, 70 Cal.App.5th 542. There, the appellate court concluded DCFS erred in failing to interview the mother's biological parents (the mother had been adopted at age two), notwithstanding the mother's denial of Indian ancestry, because "parents may not know their possible relationship with or connection to an Indian tribe." (*Id.* at 548, 552-554.) The court further concluded the error was prejudicial, applying an automatic-reversal rule. (See *id.* at 556.) We reject that rule for the reasons explained above. (See *Dezi C.*, *supra*, 79 Cal.App.5th at 782-784; *id.* at 777, citing *In re*

---

[5] The record's omission of any statement from Alleged Father himself is not attributable to any error on the part of DCFS, which exercised due diligence in attempting to locate him. Appellant told DCFS she had no contact information for Alleged Father or his relatives. "[W]e cannot ask the agency to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided." (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1082.)

11

*Y.W.*, at 556.)  Moreover, in determining whether there is reason to believe the parents may be tribal members or eligible for membership, "[w]e decline to adopt a rule that obligates us to view with a jaundiced eye whatever parents report about their heritage, at least in the usual case where the parents were not adopted and thus can be presumed to be knowledgeable." (*Dezi C.*, at 784.)  Here, appellant was not adopted.  Further, she relied on and lived with her mother (Grandmother), through whom she presumably would have obtained knowledge about any connection to an Indian tribe -- the very type of connection she repeatedly denied.  In sum, because appellant neither proffers nor identifies in the record any reason to believe G.S. may be an Indian child, we conclude any inquiry error was harmless.

**DISPOSITION**

The order terminating appellant's parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, P. J.


We concur:


WILLHITE, J.


CURREY, J.